UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

MedCam, Inc., n/k/a OptiMEMS, Inc., a
Washington corporation,

Civil No. 06-1509 (PAM/JSM)

Plaintiff,

v.

**MEMORANDUM AND ORDER**

JDS Uniphase Corporation, a Delaware
corporation, as successor of Cronos
Integrated Microsystems, Inc.,

Defendant.

---

This matter is before the Court on Defendant's Motion to Dismiss or Transfer Venue. For the reasons that follow, the Motion is granted in part and denied in part as to dismissal, and denied as to transfer.

**BACKGROUND**

In the 1990s, Plaintiff MedCam, Inc. formulated a plan for using micro-electro mechanical systems (MEMS) technology to create a medical endoscope. MedCam approached a not-for-profit company, MCNC, which had significant expertise with MEMS technology, to aid MedCam in building a prototype. In 1995, MedCam and MCNC entered into a Development and License Agreement ("the Agreement") to govern their joint effort to develop a micro-camera that could be mounted on a catheter and used in the medical field. The Agreement provided that MedCam would have the exclusive right to sell work product classified as "joint technology," and MCNC agreed not to compete with MedCam within

MedCam's field of use during the life of the Agreement and for two years thereafter. The Agreement also contained an arbitration provision.

In 1997, an issue arose over whether certain MEMS technology was joint technology, and MedCam initiated arbitration proceedings against MCNC. MedCam prevailed, and the arbitrator ordered MCNC to pay damages to MedCam. The arbitrator also warned MCNC against violating the non-compete clause. On July 13, 1998, the parties formally terminated the Agreement, which meant that the covenant not to compete would expire two years later on July 13, 2000.

Meanwhile, MCNC had began the process of spinning-off a new for-profit company, Cronos Integrated Microsystems, Inc. According to the Complaint, MCNC "embarked on a secret and systematic course to appropriate for itself the enormous potential profits from MedCam's inventions." (Compl. ¶ 46.) MCNC incorporated Cronos in February 1998 and announced the spinoff on April 28, 1999. Cronos issued its stock to MCNC in return for a license of MCNC's technology, which MedCam claims was actually MedCam's technology. MCNC allegedly transferred the technology to Cronos throughout 1998 and 1999, until February 4, 2000. Also during 1998 and 1999, MCNC and Cronos worked with Lucent Technologies on Lucent's optical switches, allegedly using MedCam's MEMS technology but not disclosing the work to MedCam.

On April 4, 2000, Defendant JDS Uniphase Corporation announced it would acquire Cronos for $750,000,000 of JDS stock. The Cronos deal was finalized on April 19, 2000, but the actual value of JDS stock transferred was $564,200,000. As the majority shareholder of

Cronos, MCNC received $234,573,240 of JDS stock. At first, JDS operated Cronos as a wholly-owned subsidiary, but the two companies merged on December 20, 2001. This merger meant that JDS assumed Cronos's rights, duties, and liabilities.

In 2003, MedCam commenced a second arbitration against MCNC, JDS, and other defendants. MCNC and JDS contested the proceeding, and the case was assigned to this Court, which ordered MCNC to submit to arbitration. The Court dismissed JDS as a defendant in that case because it was not a signatory to the Agreement. The arbitration between MedCam and MCNC will be tried in September 2006.

In response to the Court's ruling, MedCam commenced this action against JDS on a theory of successor-corporation liability based on Cronos's allegedly wrongful interference with the Agreement. MedCam alleges that MCNC spun-off Cronos for the purpose of misappropriating MedCam's MEMS technology. MedCam theorizes that MCNC stole the technology, licensed the technology to Cronos, and then sold the technology in the form of Cronos to JDS. MedCam posits that Cronos had a duty to disclose the JDS opportunity to MedCam as the true owner of the technology JDS wanted. Based on these events, MedCam asserts four claims against JDS as Cronos's successor: (1) tortious interference with contract, (2) tortious interference with prospective contractual advantage, (3) unjust enrichment, and (4) contempt. MedCam seeks to recover the money JDS paid to the sellers of Cronos, primarily MCNC, as damages.

**DISCUSSION**

In its Motion to Dismiss, JDS challenges the legal sufficiency of MedCam's claims

under Federal Rule of Civil Procedure 12(b)(6). JDS also argues that the claims are barred by the applicable statutes of limitations. In the alternative to dismissal, JDS moves to transfer venue to California.

**A.    Standard of Review for Motion to Dismiss**

On the Motion to Dismiss, the Court takes all facts alleged in the Complaint as true. See Westcott v. Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). The Court must construe the allegations in the Complaint and reasonable inferences arising from the pleading favorably to MedCam. See Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986). A motion to dismiss will be granted only if "it appears beyond doubt that the Plaintiff can prove no set of facts which would entitle him to relief." Id.; see also Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

**B.    Tortious Interference with Contract**

The elements of tortious interference with contract are: "(1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) his intentional procurement of its breach; (4) without justification; and (5) damages resulting therefrom." Bouten v. Richard Miller Homes, Inc., 321 N.W.2d 895, 900 (Minn. 1982) (quoting Royal Realty Co. v. Levin, 69 N.W.2d 667, 671 (Minn. 1955)).

The contract at issue in this case is the Agreement between MedCam and MCNC. MedCam alleges that it enjoyed contractual rights with MCNC, including the right to protect its technology. MedCam further avers that Cronos knew about the Agreement, yet purposefully induced MCNC to breach the Agreement by misappropriating the JDS opportunity in April 2000 and then persuading MCNC to ratify the misappropriation and sale in derogation

4

of its contractual obligations. According to MedCam, Cronos had no justification for procuring MCNC's breach of the Agreement. Finally, MedCam asserts damage because the Cronos sale precluded MedCam from selling its technology to JDS, damaged its contractual expectations under the Agreement, and diminished the value of its intellectual property.

As JDS points out, when Cronos was sold to JDS, MCNC had already purportedly breached the Agreement by misappropriating MedCam's technology. The issue in this case is then narrowed to whether the sale to JDS constituted another breach. Although the Court questions whether MedCam's allegations can withstand an evidentiary test, that inquiry is for another day. The allegations in the Complaint, taken as true and viewed in the light most favorable to MedCam, are sufficient to survive a motion to dismiss based on the substantive elements.

JDS also argues that the tortious interference claim should be dismissed because a party cannot interfere with its own contract. See Nordling v. N. States Power Co., 478 N.W.2d 498, 505 (Minn. 1991) (citations omitted). However, when MCNC allegedly breached the Agreement in April 2000, Cronos was an independent entity and therefore legally capable as a third party of inducing MCNC to breach the Agreement. The Court will not dismiss the claim on this basis.

Finally, JDS submits that MedCam's tortious interference claim is barred by a statute of limitations. The limitations period for this type of action is six years. Randy's Sanitation, Inc. v. Wright County, 65 F. Supp. 2d 1017, 1031 (D. Minn. 1999) (Magnuson, J.) (citing Minn. Stat. § 541.05). MedCam argues that the statute of limitations does not apply because

the cause of action did not accrue until Cronos was sold to JDS on April 19, 2000. According to MedCam, this date marks the transfer of the allegedly misappropriated technology and when the amount of damages was established. MedCam brought this action on April 14, 2006, just shy of six years from the date of the sale. Although many events pled in the Complaint occurred prior to April 19, 2000, these facts can be viewed as merely providing historical background. MedCam is suing only for tortious interference with the Agreement caused by the April 19, 2000 sale. This event occurred within the six-year limitations period, and the statute of limitations therefore does not bar the claim.

**C.     Interference with Prospective Contractual Relations**

The Complaint avers that Cronos interfered with MedCam's prospective business advantage with MCNC, Lucent, and Nortel. (Compl. ¶¶ 116-17.) In MedCam's opposition memorandum, however, it suggests that Cronos interfered with MedCam's prospective opportunity to sell its technology to JDS. This suggestion cannot be reconciled with the actual allegations pled in the Complaint; it appears to be a separate cause of action, and the Court is constrained to address only what is actually pled in the Complaint.[1]

To sufficiently plead a claim for interference with prospective contractual relations, MedCam must allege that Cronos intentionally and improperly interfered with MedCam's

---

[1] Even if MedCam had pled a claim of interference with prospective contractual relations against JDS, based on MedCam's prospective opportunity to sell its technology to JDS, the allegations could not withstand dismissal. The Complaint fails to allege any business relationship or contractual discussions between MedCam and JDS. The Complaint also fails to allege intentional and improper interference by Cronos in this regard.

prospective contractual relationship with MCNC, Lucent, or Nortel. See United Wild Rice, Inc. v. Nelson, 313 N.W.2d 628, 632-33 (Minn. 1982) (citing Restatement (Second) of Torts § 766B (1979)). Such interference can consist of either "inducing or otherwise causing a third person not to enter into or continue the prospective relation" or "preventing the other from acquiring or continuing the prospective relation." Id. (quoting Restatement (Second) of Torts § 766B).

Here, the Complaint fails to allege any prospective business relationship or contractual discussions between MedCam and MCNC, Lucent, or Nortel. In fact, MedCam and MCNC had just terminated their Agreement, and there is no mention of any future dealings. The Complaint alleges no discussions or negotiations whatsoever between MedCam and Lucent or Nortel, and MedCam does not support this aspect of its claim in its opposition memorandum. Any prospect of a business deal between MedCam and Lucent or Nortel was no more than wishful thinking, at most. In addition, the Complaint alleges that business dealings between Lucent and Cronos occurred in 1998 and 1999, which predate the applicable six-year statute of limitations period. See Minn. Stat. § 541.05. MedCam's claim for interference with prospective contractual relations is dismissed.

**D.     Unjust Enrichment**

MedCam contends that Cronos was unjustly enriched by selling MedCam's technology to JDS. "To establish an unjust enrichment claim, the claimant must show that the defendant has knowingly received or obtained something of value for which the defendant 'in equity and good conscience' should pay." ServiceMaster of St. Cloud v. GAB Bus. Servs., Inc., 544

N.W.2d 302, 306 (Minn. 1996) (citation omitted).  Neither JDS nor Cronos received any money from the sale of Cronos; rather, Cronos's shareholders received the purchase price in the form of JDS stock.  MCNC was Cronos's biggest shareholder, and MedCam is pursuing arbitration against MCNC.  MedCam may have a claim for unjust enrichment against the shareholders who received something of value from the sale, but not against JDS or Cronos. Accordingly, the Court dismisses the claim for unjust enrichment.

**E.     Contempt Claim**

MedCam seeks a finding of contempt for alleged violations of the November 26, 1997 arbitration order.  This claim fails as a matter of law.  First, there is no underlying order which JDS or Cronos could have violated because MedCam never petitioned any court for an order confirming the arbitration award.  MedCam cannot now obtain such an order because the Federal Arbitration Act has a one-year statute of limitations for judicial confirmations of arbitration awards.  See 9 U.S.C. § 9; RGA Reinsurance Co. v. Ulico Cas. Co., 355 F.3d 1136, 1139 (8th Cir. 2004).  The one-year period has long expired.

Moreover, this Court previously held that MedCam could not compel JDS to arbitrate because JDS was not a signatory of the Agreement.  It follows that because JDS is not bound by the arbitration award, it cannot be found in contempt of it.  The contempt claim is dismissed.[2]

---

[2]MedCam asks to re-plead the contempt claim as a second tortious interference with contract count.  A party is permitted to amend a pleading once as a matter of course before a responsive pleading is filed.  Fed. R. Civ. P. 15(a).  No responsive pleading has been filed in this case, and MedCam therefore need not obtain the Court's permission to amend its

**F.     Transfer of Venue**

In the alternative to dismissal, JDS asks the Court to transfer this case to the Northern District of California. "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). However, a court is not limited to the statutory language because transfer determinations "require a case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors." Terra Int'l, Inc. v. Miss. Chem. Corp., 119 F.3d 688, 691 (8th Cir. 1997).

"The party seeking transfer bears the heavy burden of showing that the balance of factors strongly favors the movant." United Mortgage Corp. v. Plaza Mortgage Corp., 853 F. Supp. 311, 315 (D. Minn. 1994) (Doty, J.) (citation omitted) (emphasis in original). There is a general presumption favoring a plaintiff's choice of forum, but a court may give that choice less deference if the plaintiff does not reside in the forum or the underlying facts did not occur there. Nelson v. Soo Line R.R. Co., 58 F. Supp. 2d 1023, 1026 (D. Minn. 1999) (Doty, J.) (citations omitted).

The balance of factors in this case may favor a transfer but not strongly enough to deprive MedCam of its chosen forum. Most of the events alleged in the Complaint occurred in North Carolina, some in California. None of the operative facts occurred in Minnesota, although the Agreement was drafted here. MedCam's principal place of business is in

---

Complaint. To the extent MedCam seeks to re-plead the contempt claim as a second tortious interference count, dismissal is without prejudice.

Washington; JDS's principal place of business is in California. One principal witness, the former general counsel of JDS, resides in California, and a few minor witnesses are also located there. No witness resides in Minnesota. JDS has documents in California, but MedCam has amassed a large volume of documents in Minnesota. The related arbitration is occurring here, although the Court realizes that JDS is not a party to that proceeding. The parties agree that Minnesota law applies. This particular Court is very familiar with the parties and the factual history of this case, having been assigned to the related litigation between MedCam and MCNC. Finally, any judgment would be enforced in California, where JDS has assets, although such enforcement would be a simple, ministerial matter.

After considering all of the relevant factors, the Court declines to transfer the case to California. Although California would be a more convenient forum for JDS, it would be less convenient for MedCam. Furthermore, a transfer would not further the interest of justice.

**CONCLUSION**

The Court dismisses with prejudice MedCam's claims for tortious interference with prospective contractual advantage and unjust enrichment, and dismisses without prejudice the contempt claim. The claim for tortious interference with contract remains. JDS's request to transfer this case to California is denied. Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion to Dismiss (Docket No. 2) is **GRANTED in part** and **DENIED in part**;

2. Counts II and III are **DISMISSED with prejudice**; and

3. Count IV is **DISMISSED without prejudice**.

Dated: July 27, 2006

                                                      s/ Paul A. Magnuson
                                                     Paul A. Magnuson
                                                     United States District Court Judge